NEW ENGLAND TRANSPORTATION COMPANY *vs.* JAMES H. DOORLEY *et al.*

FEBRUARY 8, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of trespass and ejectment. It was tried in the superior court before a justice of that court sitting without a jury and resulted in a decision for the defendants. Plaintiff excepted to that decision, and to six rulings, made by the trial justice in the course of the trial, on the admission and exclusion of certain evidence. Plaintiff has duly prosecuted these exceptions to this court by its bill of exceptions.

The plaintiff is the lessee of certain premises on Fountain street in the city of Providence. James Lavell is the owner of these premises and the lessor of the plaintiff. The defendant James H. Doorley is the lessee under the plaintiff, with the consent of Lavell, of a portion of said premises. The said defendant's lease from the plaintiff, among other things, provides that the lessee shall pay on the first of every month in advance as rent $200, payable not later than the tenth of the month; that these premises shall be used only for the purpose of the sale of nonintoxicating beverages; that the lessee shall not assign or underlet without written permission from the lessor; that the lease is made subject to procuring the consent of the owner, which consent indorsed thereon is necessary to make the lease effective. The consent of James Lavell is duly indorsed on the lease.

The plaintiff alleges in its declaration three specific breaches of this lease by James H. Doorley, as follows: (1) That he underlet the premises to John F. Doorley without the written permission of the plaintiff; (2) that James H. Doorley did knowingly permit the sale of intoxicating beverages on the premises; and (3) that James H. Doorley did not pay the rent of said premises as stipulated in the lease.

The defendants pleaded the general issue and also a special plea in which they alleged that it was understood and agreed that the premises were to be used for the sale of alcoholic beverages; that John F. Doorley was to be permitted

to sell such beverages on the premises, upon securing a proper license from the licensing authorities of the city of Providence; that defendant James H. Doorley could not secure such a license as he was already the holder of a wholesale license and that the lease was entered into with James H. Doorley because plaintiff's lessor, Lavell, believed said James H. Doorley was more financially responsible than John F. Doorley and that said plaintiff's lessor, Lavell, wanted said James H. Doorley's signature on the lease to make the rent more secure.

Plaintiff replied to these pleas by joining issue on the first and specially traversing the second, only admitting that John F. Doorley did procure a retail liquor license and that since September 21, 1933, the said John F. Doorley did, and the said James H. Doorley never did, operate and carry on business on the leased premises.

On these pleadings the real issue was whether or not the defendants had paid the stipulated rent and also whether they had any understanding with the plaintiff as to the other matters alleged by the plaintiff as breaches of the lease. By their special plea the defendants admitted the sale of intoxicating beverages on the premises and the underletting to John F. Doorley without first obtaining the lessor's written consent to such underletting, which acts the plaintiff had alleged as breaches of the lease but which defendants sought to justify in their plea. This plea remained in the case and was not withdrawn.

Plaintiff also introduced evidence of four licenses issued to John F. Doorley for the sale of alcoholic beverages on the leased premises during the years 1933, 1934, 1935 and 1936. The first two licenses were for the sale of nonintoxicating beverages and the other two were for the sale of intoxicating beverages. There was other evidence in the form of a certified copy of a writ of replevin in which John F. Doorley is the plaintiff, claiming certain goods and chattels alleged as belonging to him and then situated on the leased premises

under attachment and in the custody of a deputy sheriff. That writ is dated November 18, 1935.

Defendant John F. Doorley testified that he occupied the leased premises and that he conducted a retail beverage business thereon under the licenses which had been introduced in evidence, and that he paid rent for said premises to James H. Doorley, the other defendant.

On this evidence the defendant James H. Doorley is clearly shown to have broken the covenants of his lease and to have forfeited his right to occupancy of the leased premises, unless there was some justification for what he did. He claims that there was, and he has accordingly introduced certain evidence to prove such justification. Much of this evidence was admitted over the objection of the plaintiff and exceptions were taken by the plaintiff to such admission. These exceptions will now be considered.

The first exception, numbered 1 and 1A in plaintiff's brief, is to two rulings of the trial justice permitting the defendants' counsel to cross-examine the plaintiff's witness McElroy by the following questions: "As a matter of fact Mr. McElroy as far as your knowledge as counsel for the New England is concerned, there is no complaint with the defendants, either one of them, as far as any violation of the lease is concerned?" and "Has your company through its Board of Directors taken any action to bring this law suit?" The witness answered both questions in the negative.

The third exception is to the allowance of the following question asked of witness McElroy while testifying for the defendants: "Does your company bring this suit of their own free will or are they compelled to do it by somebody else?" The witness answered: "The answer that I would like to make is that our company would like to have the situation remain as it is at the present time. May I qualify that? That is as far as I am informed by my people."

These questions were irrelevant and immaterial to the issue on trial in this action. The witness, though plaintiff's local counsel in Providence, was not its counsel in this case.

The plaintiff had authorized other counsel to bring this action and to prosecute such action in court. Whether it was a willing or an unwilling plaintiff was immaterial, and was not a proper subject of inquiry. It was likewise not a proper subject of inquiry whether the board of directors of the plaintiff company had taken action to bring the suit. The fact was that the company was actually then before the court as a plaintiff prosecuting its action by its duly authorized counsel. That fact precluded any further inquiry as to why plaintiff was in court in this case.

Defendant contends that the court has authority to and may, on its own motion, inquire into the interest of the plaintiff of record. It cites in support of this contention *Miller* v. *Continental Assurance Co.,* 233 Mo. 91. In that case, the question was whether the attorneys who were acting for the corporation actually had authority to do so. Here the question is entirely different. No claim was made in the superior court, and none is made here, that the attorneys of record in the instant case were acting without authority from the company, but an attempt was made by cross-examination of McElroy to show that, while the company had started the action, it was not the company's original desire to do so. The cited case holds that there is a strong presumption, where a party appears in a court of record by a duly licensed and practicing attorney, that the attorney was duly authorized to appear and represent such party, and this, the court said, is the general rule in almost every state.

The Missouri court further said in the *Miller* case, *supra*: "We are clearly of the opinion, based upon reason and authority, that this court has the power to investigate and determine by what authority an attorney acts for a client in this court whom he professes to represent, whenever that question is properly raised, or by the court of its own motion whenever it has reasonable grounds to apprehend that such authority does not exist."

The authority of the attorneys in the instant case was never questioned and there was no reasonable ground for the court to apprehend that those attorneys were without proper authority. On the whole, after a careful examination of the cited case, we are of the opinion that it is not in point here, unless it be so for the plaintiff, on the point that there is a firmly established presumption in favor of an attorney's authority to act for any client he professes to represent.

We are clearly of the opinion also that it was error to allow these questions to be answered and that in a trial before a jury such allowance would necessarily be prejudicial error. In a trial before a justice sitting without a jury, however, the allowance of such questions would not ordinarily be prejudicial error, if it clearly appeared that the admission of such irrelevant evidence had not so affected his judgment that his decision rested upon such evidence.

That this evidence did so affect the judgment of the trial justice in the instant case is quite apparent from the transcript, particularly that portion which is as follows: "The Court: I'll tell you, Mr. Horenstein, the way I feel about this thing. I don't feel this court is justified in allowing itself to be used for an ulterior purpose by somebody outside. Here is a plaintiff in this case who comes in and tells me we are compelled to bring this suit, this action of trespass and ejectment against our own judgment. We don't want to do it but we are compelled to."

"Mr. Horenstein: They have a right to do it."

"The Court: Decision for the defendant for costs."

The plaintiff's exceptions one and three are accordingly sustained.

Plaintiff's fourth exception, numbered in its brief 4 and 4A, is to two rulings of the trial justice allowing the following questions of the defendant's counsel to defendant James H. Doorley referring to negotiations for the lease: "Was there an agreement between you and Mr. Lavell and Mr. Lavery in addition to what was contained in the lease about

the operation of the premises by your brother John Doorley?" The answer was: "There was, yes." The second question was: "What understanding, if any, did you have with Mr. Lavery and Mr. Lavell in regard to your name on the lease?" The trial justice permitted this question to be answered on the condition that, if the answer appeared contrary to the express terms of the lease, plaintiff could move to strike it out. The answer was: "The reason that my name was on the lease they would not accept John Doorley. They had nothing to okay the lease by and they asked me to put my name on the lease, both Mr. Lavery and Mr. Lavell." The witness then answered two succeeding questions designed to give the reason or purpose of his signing the lease as follows: "To protect the Rhode Island Brewing Company" and "A matter of finances."

The plaintiff thereupon moved to strike out the answer on the ground that the lease was specifically between two parties named therein. Plaintiff's fifth exception is to the ruling of the trial justice denying this motion to strike out.

The sixth exception is to the ruling of the trial justice allowing the defendants' counsel to ask defendant John F. Doorley the following question: "At the time this lease was entered into did you have any understanding with James Doorley and Mr. Lavell and Mr. Lavery?" The witness answered: "Not with Mr. Lavery, but through Mr. Lavell and James Doorley I did."

We are of the opinion that the evidence brought out by each of these questions was clearly inadmissible. The questions were irrelevant and improper. The issue on trial was the right to possession of the premises under a lease as between the parties to the lease. Lavell was not a party to the lease; neither was John F. Doorley. Any understanding by or between them would not bind the parties. Mr. Lavery was not an officer of the plaintiff company and it was not shown that he had any authority to bind it through verbal understandings. He did not execute the lease on behalf of the company but was merely a witness to its execution. The

vice-president of the plaintiff company, C. E. Smith, executed the lease for the company.

Furthermore, the testimony elicited by the questions did not serve to explain the terms and covenants of the lease but rather to contradict some of them substantially and directly. The lease named James H. Doorley as lessee bound by covenants not to underlet without permission in writing of the lessor or to permit the sale of intoxicating beverages on the premises. The testimony about the alleged verbal understanding is to the effect that John F. Doorley was to be let in as the tenant and it was to be expected he would sell intoxicating liquor on the premises under the licenses which he obtained.

The trial justice appears to have viewed the case as one having equitable phases which justified such evidence being admitted. In denying the motion to strike out the testimony of James H. Doorley to which objection was made, on the ground that "the lease is specifically between two parties", the trial justice said: "That is true but you can read also in it that Mr. James Doorley was to be regarded as trustee for John."

In this view, we think the trial justice committed error. It may well be that there was something behind the scenes, so to speak, in the transaction between the parties to this lease which, if tried out in the proper forum in an appropriate proceeding, with all the participants to the alleged collateral understanding parties before the court, would justify a consideration of such evidence. But this is a common law action and an especially rigid one having to do with the recovery of the possession of real estate under the terms and conditions of a solemn instrument. There is no room in the trial of such an action for any departure from the rules of evidence such as was allowed by the trial justice.

Plaintiff's fourth, fifth and sixth exceptions are therefore sustained.

Plaintiff's second exception is to the refusal of the trial justice to allow plaintiff's counsel to read into the evidence

as part of its case certain pleadings of the defendants containing certain admissions made by them therein. The trial justice appears to have agreed with the view of the plaintiff's counsel that such admissions were to be considered as evidence but stated that as the pleadings were already in the case, he would not permit them to be read into the stenographic record of the evidence taken on the trial. We understand now that the plaintiff contends under this exception, that this acceptance of the admissions, in the pleas as evidence merely, does not go far enough, and that the correct rule is that such admissions may be offered in evidence not alone as evidence but as conclusive proof of the fact admitted in the plea, citing in support thereof *O'Connell* v. *King & Son*, 26 R. I. 544, *Conley* v. *Bryant*, 19 R. I. 404, and Jones on Evidence, (3rd ed.) § 272. The text of the last citation does not seem to go as far as plaintiff contends. Whether or not the many cases cited by the author in support of the text support the broader contention of the plaintiff we need not inquire, as the evidence in the instant case leaves no doubt of the proof of the breaches alleged in the plaintiff's declaration, which are admitted in the plea. We need only add that our own cases above cited do not go to the extent contended for by the plaintiff.

As the plaintiff was not prejudiced by the trial justice's refusal to permit the reading into the record of the defendants' pleadings already in the case, its second exception must be overruled.

On the view which we have taken, the alleged breaches of the lease by the defendant, James H. Doorley, as to his covenants not to permit the sale of intoxicating liquor and not to underlet the premises without the written consent of the lessor, have been proven. But the defendants contend that, assuming this to be so, the plaintiff is nevertheless not entitled to a forfeiture of the lease by reason of these breaches because, by acceptance of the rent after the alleged breaches became known to it, plaintiff waived its right to claim a forfeiture.

In support of the above contention, the defendants cite *Smith* v. *The Edgewood Casino,* 19 R. I. 628, *Ireland* v. *Nichols,* 46 N. Y. 413 and *Linn Woolen Co.* v. *Brown,* 110 Me. 88, 85 A. 404. As to the alleged breach of the covenant not to underlet without written permission, these cases are in point, but as to the covenant not to permit the sale of intoxicating beverages, they are not. The latter covenant is clearly a continuing one, and it has been held by this court that, where a condition in a lease is continuous, a waiver only discharges the particular breach. *Granite Building Ass'n* v. *Greene,* 25 R. I. 48. In that case, the court, at page 54, in discussing a breach of a covenant like the one in the instant case, said "that the breach of the covenant in question was a continuing one, and that the acceptance of the rent by the plaintiff for the month of January 1902, even if it had knowledge of the breach at that time, was not a waiver of its right to maintain its present action for a subsequent and continuing breach of the said covenant."

Since the stipulated rent was not accepted during the period from January 15, 1936 to February 18, 1936, and the breach still continued, plaintiff was entitled to claim a forfeiture of the lease. Waiver of prior breaches does not excuse the lessee in case of a subsequent breach. The lessor may still insist upon a forfeiture for the later breach. *Farr* v. *Kenyon,* 20 R. I. 376. Therefore the defendants' contention that the plaintiff waived its right to claim a forfeiture is, at least as to the breach of the covenant not to permit the sale of intoxicating beverages, without merit.

Plaintiff's exception seven is to the decision of the trial justice for the defendants for costs. We are of the opinion that the decision is, as stated in our discussion of plaintiff's exception one and three, clearly based upon inadmissible evidence and therefore erroneous. It is erroneous also for another reason, namely, that on our view of the evidence these defendants are guilty of at least a breach of the covenant in the lease not to permit the sale of intoxicating beverages, and that such breach has not been waived by the

plaintiff. Plaintiff's seventh exception is therefore sustained.

Ordinarily the sustaining of this exception and the others above discussed would entitle the plaintiff only to a new trial, but as we have found that at least one breach of the lease has been clearly proved, and not waived, the decision of the trial justice must be reversed and judgment entered for the plaintiff.

The defendants, therefore, may, if they shall see fit, appear on February 16, 1938, and show cause, if any they have, why this case should not be remitted to the superior court with direction to enter judgment for the plaintiff for possession and costs.

*J. Clifden O'Reilly, Isadore S. Horenstein,* for plaintiff.

*Francis J. Kiernan, Michael DeCiantis, Theodore Jaffe,* for defendant.